*OFFICE OF INSPECTOR GENERAL*

*Washington, D.C.  20554*



November 24, 2020

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
New York, New York 10601

  Re: ***United States v. Simon Goldbrener, et al.,***
     **18 Cr. 614 (KMK)**

Dear Judge Karas,

I write respectfully on behalf of the Office of Inspector General of the Federal
Communications Commissions and request consideration of the following statement in
support of sentencing in the above-referenced matter.

In 1996, Congress saw increasing disparities in technological opportunities available to
students of means and students in lower-income areas. In order to bridge that gap,
Congress mandated that schools and libraries receive discounted telecommunications
services through the newly codified Universal Service Fund. In turn, the Federal
Communications Commission (FCC) proceeded to implement that mandate, commonly
known today as the E-rate program, through a private non-profit corporation known as
the Universal Service Administrative Company (USAC).

Eligible schools, school districts and libraries may apply individually or as part of a
consortium.  Funding may be requested under two categories of service: category one
services to a school or library (telecommunications, telecommunications services and
Internet access), and category two services that deliver Internet access within schools and
libraries (internal connections, basic maintenance of internal connections, and managed
internal broadband services). Discounts for support depend on the level of poverty and
whether the school or library is located in an urban or rural area. The discounts range
from 20 percent to 90 percent of the costs of eligible services.

The FCC monitors the E-Rate program for fraud and abuse. While there are many reasons for enforcement of the rules, two stand out: (1) the program cannot accomplish its goals of aiding students at impoverished schools that receive funds if those funds are not directed toward the students' education and access to modern telecommunications; and (2) the program operates with limited funds and, therefore, to the extent that money is illegally diverted, the pool of funds available to deserving, impoverished students at other schools is diminished. This case implicates both concerns.

In 2016, FCC OIG investigators, auditors, and IT staff searched eleven Yeshiva Schools located in Rockland County, NY. These eleven schools served 1,751 students, of which 80% (1,413) were low-income students and therefore eligible to participate in the National School Lunch Program (NSLP). FCC OIG staff attempted to verify that more than $2 million of E-rate supported goods and services were provided, installed, and used by these students. The $2 million of equipment searched for represents less than half of the total amount of funding provided to these schools, the remainder of which could not be easily confirmed such as VOIP service or internet access. The equipment included phone systems, multimedia systems, equipment to support distance learning and remote access to homework assignments and network equipment to support classroom activities. While not requested as such, some of the equipment that was to have been installed between 2009 and 2013 is the type of equipment needed in the current pandemic to support remote learning for students.

During their search, FCC staff were unable to locate or confirm the delivery of almost $1.3 million of equipment, representing almost 64% of the funds disbursed as to the specific equipment reviewed. Furthermore, this amount does not account for potential fraud likely perpetrated at numerous other schools served by the defendants, representing tens of millions of dollars in disbursements, but where FCC OIG did not have the resources to search.

Fraud in the E-rate program has serious real-world consequences for schools and students. Funds wasted through fraud diminishes the money available to fund legitimate equipment needs at schools nationwide. During the relevant time period for this case, the E-rate program lacked funding to provide funds for all requests nationwide every year the fraud was committed except for Funding Year 2010. The funding provided to these 11 schools was misused and, given the finite nature of the E-rate program fund, clearly could have been used to provide E-rate support to deserving projects at other schools, or to the innocent students actually needing equipment and services at the affected schools.

During 2009, 2011, 2012, and 2013, after exhausting all available E-rate funds, USAC was forced to deny funding to thousands of schools and districts located throughout the country for internal connections equipment and basic maintenance, including hundreds located in New York, responsible for educating millions of students many of whom were underprivileged. By way of example, due to lack of funds, USAC was forced to deny the following local school/district funding requests while expending funds to the defendants' fraudulent activities:

- FY 2013 Hyde Leadership Charter School, located in the Bronx serving approximately 700 students, 93% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $75,000 (Form 471 # 918836);

- FY 2013 Cardinal Hayes High School, located in the Bronx serving approximately 420 students, 72% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $321,000 (471 # 932506);

- FY 2012 Harlem Village Academies, a group of schools located in Manhattan serving approximately 1,000 students, 80% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $235,000 (Form 471 # 844887);

- FY 2012 The Opportunity Charter School, located in Manhattan serving approximately 1,000 students, 80% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $70,000 (Form 471 # 874314);

- FY 2011 Academy of Mount St. Ursula School, located in the Bronx serving approximately 350 students, 75% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $47,000 (Form 471 # 777256);

- FY 2011 St. Hope Leadership Academy, located in Manhattan serving approximately 300 students, 70% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $15,000 (Form 471 # 803808);

- FY 2009 Immaculate Conception School, located in Manhattan serving approximately 240 students, 48% of whom qualified for a free or reduced-price lunch, requested equipment and services costing approximately $4,800 (Form 471 # 659494);

Further, the 1,751 students attending the 11 schools searched by FCC OIG were deprived of the educational benefits that were to have been provided by this equipment.

Additionally, all E-rate fraud ultimately impacts Americans throughout the country. Americans ultimately bear the burden of funding the Universal Service Fund (USF) through direct and indirect fees charged by vendors of telecommunications services. These fees are pass-through contributions into the USF. The FCC sets contribution requirements (the contribution factor) on a quarterly basis based on telecommunications companies' interstate end-user revenues, to collect funds as needed for the programs supported by the USF.

In 2008, when defendants' fraudulent activities began, the FCC set the contribution factor (fee) at 10.2%. During the course of the defendants' fraudulent activities, the contribution factor nearly doubled to 18.2%. Although there are certainly multiple factors other than the defendants' fraudulent activities that contributed to the large increase in required payments by Americans using telecommunications services, the fact remains that the defendants' behavior ultimately impacted Americans' wallets, some of whom were undoubtedly struggling to make ends meet.

Fraud of the sort conducted by defendants may reduce Americans' confidence that the goals of the E-rate program are being met and the fees Americans provide to fund the USF are properly used. The E-rate program is intended to provide up-to-date telecommunications equipment and services needed by students to engage fully in the internet-connected world. Defendants' conduct deprived those students of that opportunity. Further, defendants' conduct went unchecked for multiple years and required significant law enforcement resources to uncover and prosecute. FCC-OIG has limited resources to investigate fraud across the country. Absent a strong message that this conduct will not be tolerated, others may be emboldened to attempt to defraud the program and further reduce confidence in the program.

Respectfully submitted,

David L. Hunt
Inspector General

By: _Sharon R. Diskin_

Sharon R. Diskin
Assistant Inspector General-
Investigations
(202) 418-1734

-4-